# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KEESHA GOODE and VICTORIA GOODMAN**, on behalf of themselves and others similarly situated,<br>　　**Plaintiffs,**<br><br>**v.**<br><br>**LEXISNEXIS RISK & INFORMATION ANALYTICS GROUP, INC.,**<br>　　**Defendant.** | Civil Action No. 11-2950<br><br>**CLASS ACTION** |

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

FRANCIS & MAILMAN, P.C.
JAMES A. FRANCIS
ERIN A. NOVAK
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

LANGER GROGAN & DIVER, P.C.
IRV ACKELSBERG
1818 Arch Street, Ste. 4130
Philadelphia, PA 19103
(215) 320-5703

CONSUMER LITIGATION ASSOCIATES, PC
Leonard A. Bennett
12515 Warwick Boulevard # 101
Newport News, VA 23606
(757) 930-3660

COMMUNITY LEGAL SERVICES, INC.
SHARON M. DIETRICH
NADIA HEWKA
1424 Chestnut Street
Philadelphia, PA 19102
(215) 981-3700

# TABLE OF CONTENTS

Table of Authorities ............................................................................................................ii

I.      INTRODUCTION ...................................................................................................2

II.     RELEVANT FACTS ...............................................................................................3

III.    ARGUMENT............................................................................................................6

        A.  Plaintiffs' Class Allegations Cannot Be Adjudicated On A Rule 12 Motion..............6

        B.  Counts I, III and IV Are Not Untimely......................................................................9

            1.  Legal Standard for "Relation Back" Under Fed. R. Civ. P. 15(c)(1)(B). ...............9

            2.  All Of Plaintiffs' Claims In Their Amended Complaint Arise Out Of The
                Same Conduct, Transaction Or Occurrence As Alleged In The Original
                Complaint And Therefore Relate Back. ...............................................................11

            3.  Counts III and IV Are Also Timely Under The Doctrine Of Equitable Tolling. ...14

IV.     CONCLUSION .....................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Andrews v. Home Depot, U.S.A., Inc.,*
  2005 WL 1490474 (D.N.J. 2005) ...................................................................................7

*Arthur v. Maersk, Inc.,*
  434 F.3d 196 (3d Cir. 2006) .......................................................................................14

*Bensel v. Allied Pilots Ass'n,*
  387 F.3d 298 (3d Cir. 2004) .................................................................................10, 12

*Bontempo v. Wolpoff & Abramson, LLP,*
  2007 WL 3174050 (W.D. Pa. 2007)...........................................................................10

*Chakejian v. Equifax Information Services, LLC,*
  256 F.R.D. 492 (E.D. Pa. 2009)...................................................................................9

*Chiang v. Veneman,*
  385 F.3d 256 (3d Cir. 2004) .........................................................................................9

*Clark v. Experian Info. Solutions, Inc.,*
  2002 WL 2005709 (D.S.C. 2002)..................................................................................9

*Dalton v. Providian Nat. Bank,*
  2007 WL 1655509 (N.D. Ohio 2007)..........................................................................11

*Farber v. General Electric Co.,*
  1994 WL 46519 (E.D. Pa. 1994) ................................................................................11

*Harper v. Trans Union, LLC,*
  2009 WL 415940 (E.D. Pa. 2009) ................................................................................9

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liab. Litig.,*
  431 F.3d 141 (3d Cir. 2005) .........................................................................................8

*In re Hydrogen Peroxide Antitrust Litig.,*
  552 F.3d 305 (3d Cir. 2008) .........................................................................................6

*In re School Asbestos Litig.,*
  789 F.2d 996 (3d Cir. 1986) .........................................................................................8

*Katz v. Carte Blanche Corp.,*
  496 F.2d 747 (3d Cir. 1974) .........................................................................................9

*Korman v. Walking Co.*,
  503 F. Supp. 2d 755 (E.D. Pa. 2007)...................................................................................2, 7

*NBL Flooring, Inc. v. Trumball Ins. Co.*,
  2011 WL 4481918 (E.D. Pa. 2011).....................................................................................2, 7

*Pella Corp. v. Saltzman*,
  606 F.3d 391 (7th Cir. 2010) .....................................................................................................8

*P.V. ex rel. Valentin v. School Dist. of Philadelphia*,
  2011 WL 5127850, (E.D. Pa. 2011) ...................................................................................2, 7

*Rose v. Rothrock*,
  2009 WL 1175614 (E.D. Pa. 2009) ..........................................................................................8

*Santos ex. Rel. Beato v. U.S.*,
  559 F.3d 189 (3d Cir. 2009) ....................................................................................................14

*Seitzinger v. Reading Hosp. & Med. Ctr.*,
  165 F.3d 236 (3d Cir. 1999) ....................................................................................................14

*Spicer v. Villanova University*,
  2006 WL 346465 (E.D. Pa. 2006) .....................................................................................10, 13

*Sullivan v. DB Investments, Inc.*,
  667 F.3d 273 (3d Cir. 2011) ..................................................................................................2, 6

*Thompson v. Merck & Co., Inc.*,
  2004 WL 62710 (E.D. Pa. 2004) ...............................................................................................8

*United Government Sec. Officers of America v. Exelon Nuclear Sec., LLC*,
  2011 WL 5340043 (E.D. Pa. 2011) ...........................................................................................8

*USX Corp. v. Barnhart*,
  395 F.3d 161 (3d Cir. 2004) ....................................................................................................10

*Webb v. Merck*,
  206 F.R.D. 399 (E.D. Pa. 2002)..................................................................................................8

*Wenzinger v. Sperry Corp.*,
  1986 WL 13497 (E.D. Pa. 1986) .............................................................................................11

*Williams v. Telespectrum, Inc.*,
  2007 U.S. Dist. LEXIS 78415 (E.D. Va. 2007)........................................................................9

## I.    INTRODUCTION

Defendant's motions to dismiss and strike are properly denied because the causes of action alleged in the Amended Class Action Complaint ("ACAC") are timely and the issue of class relief is not properly considered on a motion under Federal Rule of Civil Procedure ("Rule) 12.

Consistent with the Court's opinion of March 12, 2012, Count I has been brought as a negligence claim under 15 U.S.C. § 1681o instead of a willfulness claim under 15 U.S.C. § 1681n. It arises out of the identical conduct and transactions alleged in the original Complaint, and is therefore timely under the "relation back" principle embodied in Rule 15(c)(1)(B).

The issue of whether the claims under Count I are properly brought on a class basis is for determination under Rule 23, and is not properly the subject of a Rule 12 motion. That is the import of the Third Circuit's recent *en banc* decision in *Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011), and many courts in this District have held that Rule 12(f) cannot be used to strike class action allegations since those allegations must be separately considered on an appropriate record under Rule 23. *See P.V. ex rel. Valentin v. School Dist. of Philadelphia*, 2011 WL 5127850, at *3-4 (E.D. Pa. Oct. 31, 2011); *Korman v. Walking Co.*, 503 F. Supp. 2d 755 (E.D. Pa. 2007); and *NBL Flooring, Inc. v. Trumball Ins. Co.*, 2011 WL 4481918 (E.D. Pa. Sept. 27, 2011).

Plaintiffs' individual damage claims for Defendant's violations of FCRA sections 1681e(b) and 1681i are asserted at this juncture because, as this Court recognized, Plaintiffs did not even have their alleged "verified admission statements" at the time they filed suit. Count III alleges that Defendant failed to "follow reasonable procedures to assure maximum possible accuracy" of its reports when it issued false and inaccurate theft reports about Plaintiffs because of so-called "admission statements" that were not actually admissions of theft. 15 U.S.C. §

2

1681e(b). Plaintiffs could not have made that claim previously as Defendant had refused to provide them with copies of those "admission statements." It was only during the pendency of Defendant's first motion to dismiss that Defendant finally produced these statements. Similarly, Count IV, which alleges that Defendant also violated its "reinvestigation" obligations under 15 U.S.C. § 1681i, cannot be plausibly characterized as a surprising expansion of the case beyond the conduct and transactions originally pled. Plaintiffs expressly alleged in their initial Complaint that Defendant's illegal practice of withholding admission statements from consumers had interfered with their ability to pursue the dispute and investigation procedures contemplated by FCRA section 1681i. Counts III and IV relate back to the original Complaint under Rule 15(c)(1)(B) and are thus also timely under the doctrine of equitable tolling.

## II.  RELEVANT FACTS

On behalf of two employer customers, Defendant LexisNexis "adjudicated" Plaintiffs Goode and Goodman as ineligible for jobs to which they had applied. These actions by Defendant were based entirely on Defendant's use of so-called "verified admission statements" in its ESTEEM database, from which Defendant concluded that Plaintiffs had admitted to stealing from their respective former employers. Defendant notified each Plaintiff that an adverse background report *might* affect their job applications—despite the fact that it had already reported its "adjudication" to the employers, along with a report detailing the facts of the supposed theft incidents in the Plaintiffs' past.

Pursuant to their rights under the FCRA, 15 U.S.C. § 1681i, Plaintiffs each initiated formal disputes with Defendant, challenging the accuracy of the theft reports that killed their respective job opportunities. As part of their respective disputes, Plaintiffs requested copies of their "admission statements" which, they explained, were essential to pursue their disputes

3

effectively.[1]  Defendant refused to do so, and sent them each the same identical form letter, informing them that its "reinvestigation" had concluded that their theft reports were valid.

Unable to directly contest the accuracy of "admission statements" they were not permitted to see, Plaintiffs framed their original Complaint around two procedural violations of the FCRA that Plaintiffs could effectively plead without possession of their statements.  In Count I, Plaintiffs alleged that Defendant violated 15 U.S.C. § 1681b(b)(3) by sending them and the members of the class the mandated Pre-Adverse Action Notices *after* it had already adjudicated them as ineligible for employment.  In Count II, Plaintiffs alleged that Defendant's failure to provide them and the class members' requested admission statements violated 15 U.S.C. § 1681g.  With regard to both violations, Plaintiffs alleged that Defendant acted willfully, and that they are entitled to statutory and punitive damages under 15 U.S.C. § 1681n.

Following the Court's March 22, 2012 decision resolving Defendant's first motion to dismiss, Plaintiffs notified the Court that they wished to amend their Complaint for two purposes.  First, given the Court's ruling that Plaintiffs' recovery under Count I will be limited to actual damages only, as provided in 15 U.S.C. § 1681o, they asserted negligence allegations that would support a recovery of actual damages for the stated violations of 15 U.S.C. § 1681b(b)(3).  Second, since Defendant finally produced the previously withheld admission statements during the proceedings on its initial motion to dismiss, [2] Plaintiffs wished to use those statements to plead

---

[1] Plaintiff Goode, for example, made an explicit connection between her request for a copy of the admission statement and her dispute, explaining to Defendant that "I cannot disprove information without knowing what it is, and where it came from." Complaint, ¶ 66 (quoting Exhibit 'F').

[2] Plaintiff Goodman saw her admission statement for the first time when Defendant attached it to its first motion to dismiss. *See* Defendant's Motion to Dismiss, Ex. 2. Defendant submitted the statement in an attempt to rebut Plaintiff's allegation that she had never admitted to the theft of $100 in merchandise, which was the substance of Defendant's report to her employer. In

additional FCRA violations that they could not have pled before and that provided additional grounds for awarding them actual damages. The Court granted Plaintiffs leave to file an Amended Complaint in its Orders of April 3, 2012 and April 12, 2012, which they filed on April 23, 2012.

Count I in the ACAC pleads that Defendant violated the same section of the FCRA as before—that Defendant is taking "adverse actions" relating to employment applications with prior compliance with the notice requirements of 15 U.S.C. § 1681b(b)(3)—while adding allegations describing the nature of Defendants negligent noncompliance. *See* ACAC, ¶¶ 123-24.

Now armed with the actual admission statements that formed the entire basis of their "adjudication" as ineligible for work, Plaintiffs have also pled two additional FCRA claims in their ACAC. First, in Count III, Plaintiffs contest the accuracy of their individual theft reports, alleging that Defendant failed to "follow reasonable procedures to assure maximum possible accuracy" of their reports, in violation of 15 U.S.C. § 1681e(b). Among other things, Count III also alleges that Defendant systematically "verifies" admission statements that lack the requisite elements of: "(1) a statement made by the employee subject of the report, (ii) about the reported incident and (iii) containing an unambiguous admission of theft, including the requisite intent." ACAC, ¶ 144. Moreover, "[e]ven after Defendant has "adjudicated" a prospective employer's inquiry and advised the consumer of her right to dispute the report, its withholding of the actual

---

suddenly producing the previously withheld document, Defendant apparently did not notice that the so-called "statement" is obviously two statements made by two separate hands, and that the one signed by Ms. Goodman is not an admission of theft. While the first motion to dismiss was still pending, Defendant also agreed to produce the statement for Plaintiff Goode.   That "statement" is actually four separate documents and the actual description of the incident is actually a statement made by a loss prevention agent, not by Ms. Goode. *See* ACAC, Ex. G.

'admission statement' further undermines the completeness of the report since the consumer is invited to dispute a statement she is not allowed to see." ACAC, ¶ 147.

Second, Plaintiffs challenge the sufficiency of Defendant's supposed "reinvestigation" of the reports after receipt of their respective disputes, under 15 U.S.C. § 1681i. Among the alleged deficiencies in Defendant's procedures is that even where the so-called "admission statements" are, at best, facially ambiguous, Defendant's personnel does not conduct any independent investigation of the actual facts and, instead, passively adopts the original employer's version of the reported theft incident without question. ACAC, ¶ 153. Plaintiffs allege that the integrity of the FCRA mandated investigation is further diminished by Defendant's refusal to provide copies of the admission statements, even when requested by the consumer. ACAC, ¶¶ 153(c), 157. "Had Defendant provided copies to the Plaintiffs, they would have been able to point out the facial deficiencies and ambiguities in their respective statements." ACAC, ¶ 158.

## III.   ARGUMENT

### A.  Plaintiffs' Class Allegations Cannot Be Adjudicated On A Rule 12 Motion

The Third Circuit and Courts from this District have consistently held that motions to strike under Rule 12(f) are an improper vehicle for attacking class action allegations. Such motions violate two basic principles established by the Third Circuit.

First, as reiterated last year in *Sullivan v. DB Investments, Inc.,* 667 F.3d 273, 308 (3d Cir. 2011) *cert. denied,* 132 S. Ct. 1876 (2012) (*en banc*) "the Rule 23 inquiry does not, and should not, involve a Rule (12)(b)(6) inquiry." Second, motions to strike pursuant to Rule 12 violate the rule in *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 316 (3d Cir. 2008) that "the requirements set out in Rule 23 are not mere pleading rules. ... The court may 'delve beyond the pleadings to determine whether the requirements for class certification are satisfied.'" A

6

court obviously cannot "delve beyond the pleadings" in consideration of a Rule 12 motion, which specifically confines factual inquiry to the pleadings. In fact, the Third Circuit explained that the 2003 Amendments to Rule 23 were intended to encourage courts to defer class certification consideration until later in the litigation when a more complete record was available. As Judge Scirica explained, "this change in language . . . reflects the need for a thorough evaluation of the Rule 23 factors-for this reason the rule does not 'require or encourage premature certification determinations.' " *Id.* at 318.

For these reasons the courts of this district reject motions to strike class action allegations under Rule 12. *P.V. ex rel. Valentin v. School Dist. of Philadelphia*, 2011 WL 5127850, at *3-4 (E.D. Pa. Oct. 31, 2011) (Davis, J.) ("Courts have good reason to decline to hastily strike class action allegations early in the litigation life cycle. Specifically, unless the parties have completed discovery and at least one party has moved for class certification, a court very rarely has the information necessary to conduct the "rigorous analysis" inherent in the class certification decision."); *Korman v. Walking Co.*, 503 F. Supp. 2d 755 (E.D. Pa. 2007) (Robreno, J.) (denying motion to strike class claims as premature in advance of discovery and class certification briefing); and *NBL Flooring, Inc. v. Trumball Ins. Co.*, 2011 WL 4481918 (E.D. Pa. Sept. 27, 2011) (Rufe, J.) (same); and *Accord, Andrews v. Home Depot, U.S.A., Inc.*, 2005 WL 1490474, *3 (D.N.J. June 23, 2005) ("the shape and form of a class action evolves only through the process of discovery. After conducting discovery, Plaintiffs in fact may be unable to satisfy the strict requirements of Rule 23. Yet at this juncture, and in consideration of the allegations of the Complaint in the light most favorable to Plaintiffs, the Court can envision a situation in which a hybrid class action might be maintained under Rule 23(c)(4). It does not

7

appear beyond doubt that no relief could be granted under any set of facts which could prove consistent with the allegations.") (citations omitted).

These decisions are consistent with the general jurisprudence that disfavors motions to strike. *Rose v. Rothrock*, 2009 WL 1175614, at *7 (E.D. Pa. Apr. 29, 2009). This is because "[s]triking a pleading is a drastic remedy." *United Government Sec. Officers of America v. Exelon Nuclear Sec., LLC*, No. 11–1928, 2011 WL 5340043, at *2 (E.D. Pa. Nov. 4., 2011).[3]

While the class allegations in this case may present interesting issues, such as the propriety of issue certification, *see, e.g. Pella Corp. v. Saltzman,* 606 F.3d 391, 394 (7th Cir. 2010) *cert. denied*, 131 S. Ct. 998, 178 L. Ed. 2d 826 (U.S. 2011) (affirming class even though, "under the district court's plan, class members still must prove individual issues of causation and damages."), this Circuit has never shied from detailed consideration of such issues in cases such as *In re School Asbestos Litig.*, 789 F.2d 996 (3d Cir. 1986) (affirming compensatory damage class for school district asbestos removal costs) and *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liab. Litig.*, 431 F.3d 141 (3d Cir. 2005) (utilizing Rule 23 to resolve tens of thousands of personal injury claims). The issues raised here could be considered modest compared to those raised in such other cases, but these issues have to be considered upon full appropriate records. New learning in the area, such the American

---

[3] Defendant identifies an inappropriate standard for a Fed. R. Civ. P. 12(f) motion to strike in its briefing. Deft.'s Mem. at 2. The Court in *Thompson v. Merck & Co., Inc.*, 2004 WL 62710 (E.D. Pa. Jan. 6, 2004) relied heavily upon its previous decision to deny class certification in a previously filed identical class action, including the same counsel, in its determination to strike class allegations. *See Webb v. Merck*, 206 F.R.D. 399 (E.D. Pa. 2002). Here, Plaintiffs have not had the benefit of class discovery, or moving the Court for certification of their proposed classes, as in *Thompson*.

Law Institute's recent *Principles of the Law of Aggregate Litigation* bear upon the issues raised.

However, they may not be considered on the bare record of a motion to strike.[4]

Therefore, prior to discovery and class certification briefing, Defendant is not entitled to strike Plaintiffs' class action allegations under Count I of their Amended Complaint.

### B.  Counts I, III and IV Are Not Untimely

#### 1.  Legal Standard for "Relation Back" under Fed. R. Civ. P. 15(c)(1)(B)

Federal Rule of Civil Procedure 15(c)(1) provides:

An amendment of a pleading relates back to the date of the original pleading when . . .

---

[4] Although briefing regarding the viability of Plaintiffs' class action allegations for Rule 23 purposes is premature and inappropriate in the context of responding to Defendant's Rule 12 motion to strike, given Defendant's preemptive attack, Plaintiffs feel compelled to note that their class allegations regarding Count I are both cognizable and meritorious. Issue certification, which is sought here by the Plaintiffs under Fed. R. Civ. P. 23(c)(4), is well recognized and allows for class treatment of liability, and a later determination of damages for individual class members. *See Chiang v. Veneman*, 385 F.3d 256, 267 (3d Cir. 2004) (Rule 23(c)(4) "both imposes a duty on the court to insure that only those questions which are appropriate for class adjudication be certified, and gives it ample power to treat common things in common and to distinguish the distinguishable." (citations omitted); and *Katz v. Carte Blanche Corp.*, 496 F.2d 747 (3d Cir. 1974) (Third Circuit upholding class certification for liability issues, while leaving damages inquiries for a later adjudication).  At the class certification stage, Plaintiffs will present a detailed discussion, supported by a fully developed record, as to why the systemic nature of Defendant's "pre-adjudication" practice and its uniform consequences warrant issue certification as to liability under FCRA section 1681b(b)(3), especially in a case where a parallel claim (Count II-FCRA section 1681g) is already likely be certified and class notice disseminated regardless.  Likewise, Plaintiffs will address why the cases of *Harper v. Trans Union, LLC*, No.04-3510, 2006 U.S. Dist. 91813 (E.D. Pa. Dec. 20, 2006), *Chakejian v. Equifax Info. Serv. LLC*, 256 F.R.D. 492, 499 (E.D. Pa. 2009) and *Williams v. Telespectrum, Inc.*, No. 3:05-cv-853, 2007 U.S. Dist. LEXIS 78415 (E.D. Va. June 1, 2007) do not support Defendant's position. Instantly, however, these cases undermine Defendant's current motion in that they were *all* decided under Rule 23 at the stage of certification, and *Harper* was part of a larger national FCRA class action in which an actual damages class consisting of millions of consumer class members *was* certified. *See Clark v. Experian Info. Solutions, Inc.*, C.A. 8:00-1217-24, 2002 WL 2005709 (D.S.C. June 26, 2002)("Despite the fact that actual damages would require individualized factual inquiries, the court finds that common questions predominate over individual questions.").

(B) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.

According to the Third Circuit, this rule is "[i]n accordance with the general theory of liberalized pleading in the federal system" and "is premised on the notion that a party is not entitled to the protection of the statute of limitations based upon the later assertion by amendment of a claim or defense that arises out of the same conduct, transaction, or occurrence set forth in the timely filed original pleading." *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004) (*citing* 6A Wright, Miller & Kane, Federal Practice & Procedure (hereafter "Wright & Miller") § 1496 (2d ed.1990)). "A party seeking relation back enjoys the general presumption in favor of allowing the amendments to the pleadings." *Spicer v. Villanova University*, 2006 WL 346465, *1 (E.D. Pa. Dec. 1, 2006) (citing *USX Corp. v. Barnhart*, 395 F.3d 161, 167 (3d Cir. 2004)).

In applying Rule 15(c)(B)(1), a court looks to "the general fact situation and legal theory" of the two pleadings, searching for the presence of "a common core of operative facts," and whether it can be said that the defendant had "fair notice" of the claims being raised in the amended pleading. *Bensel*, 387 F.3d at 310. This liberal approach represents a "shift away from the rigid notions of 'forms' and 'causes of action' to a more functional [focus on] the underlying conduct, transaction or occurrence." Wright & Miller § 1497. "The fact that an amendment changes the legal theory on which the action initially was brought is of no consequence if the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading." *Id. See, e.g.*, *Spicer v. Villanova Univ.* (amended pleading alleging claim of disability discrimination related back to original pleading that alleged race and sex discrimination since the "general 'legal theory' " of the two pleadings was employment discrimination); *Bontempo v. Wolpoff & Abramson, LLP*, 2007 WL 3174050 (W.D. Pa. Oct. 29, 2007) (an action involving defendant's alleged violations of Fair Debt Collection

10

Practices Act in enforcing credit card debt, amended complaint that alleged misrepresentations in state court collection filing related back to original complaint that alleged misrepresentations in arbitrations); *Dalton v. Providian Nat. Bank*, 2007 WL 1655509 (N.D. Ohio, June 4, 2007) (consumer's FCRA claims in amended complaint related back to original pleading that raised claims under FDCPA); *Farber v. General Electric Co.*, 1994 WL 46519 (E.D. Pa. Feb. 16, 1994) (employee claim of retaliatory layoff relates back to original allegation of discriminatory treatment on the job); *Wenzinger v. Sperry Corp.*, 1986 WL 13497 (E.D. Pa. Nov. 26, 1986) (race discrimination claim first raised in amended complaint related back to ERISA and age discrimination claims in original pleading because "[s]tripped to its essential form, the complaint charges that [the plaintiff] was terminated for improper, discriminatory and unlawful reasons. The factual issues revolve around his work performance and Sperry's motives for the termination.   These issues remain critical whether the allegation is one of age or racial discrimination.")

       **2.**       **All Of Plaintiffs' Claims In Their Amended Complaint Arise Out Of The Same Conduct, Transaction Or Occurrence As Alleged In The Original Complaint And Therefore Relate Back**

The "general fact situation and legal theory" alleged in the original Complaint encompasses the following two transactions involving each of the named plaintiffs: (1) they both lost job opportunities (and, in the case of Ms. Goodman, her existing job) in 2009 based on Defendant's reporting them as "verified," admitted thieves and (2), in the course of their subsequent efforts to dispute the accuracy of their respective theft reports, Defendant refused to give them copies of the so-called "admission statements" that were the sole basis of the reports. In each of these transactions, the Complaint alleged Defendant violated its obligations under the FCRA. It is undisputed that the original Complaint, which was filed on May 3, 2011, was timely

under the applicable two-year statute of limitations. *See* 15 U.S.C. § 1681p (FCRA claims must be brought within two years of discovery of the violation or within five years of the occurrence).

The allegations contained within the ACAC are part of that same "core of operative facts" and the same "general fact situation and legal theory" originally pled. *Bensel*, 387 F.3d at 310. The newly framed Count I obviously relates back since it is the identical claim originally made, except that it alleges negligence on the part of Defendant rather than willfulness, in conformity to the Court's decision. Like the defendant in *Bensel*, LexisNexis "was unquestionably on notice," *id.*, that it could be held liable for acting negligently in violating the Pre-Adverse Action Notice requirements of 15 U.S.C. § 1681b(b)(3) by virtue of the original Complaint that alleged it was doing so willfully.

Counts III and IV of the ACAC are similarly well within the "core of operative facts" stated in the initial pleading, as they were both *expressly* anticipated in the first Complaint. In that Complaint, Plaintiffs made clear that they had been requesting copies of their respective admission statements precisely in order to be able to challenge the accuracy of the theft reports based on those statements[5]—*i.e.,* the subject of Count III. They also made clear that the failure of

---

[5] From multiple statements in the original Complaint, Defendant was plainly on notice that Plaintiff Goode wanted to contest the accuracy of the report that was sent to her prospective employer. Exhibit D to both the original complaint and the ACAC—her letter to Defendant—states the following:

> I am writing to challenge my esteem report and to request a copy of all information about me that choice point has . . . Please send me a copy of my complete file. . . I have become aware that choice point is issuing Esteem report telling employers that I admitted to theft of merchandise from Forman mills in October 2008. This is not true. Did not steal from them. I was accused of not reporting on a former employee who was stealing merchandise, but I did not steal anything myself."

Similarly, Plaintiff Goodman, in her communication with Defendant (Ex. J in the original Complaint and renamed Ex. K in the ACAC) stated, "the Loss Prevention kept saying they have a letter that I wrote & sign I just want a copy of it and the information was not Right."

Defendant to honor their requests was interfering with their rights under the dispute and reinvestigation procedure set forth in 15 U.S.C. § 1681i[6]—the subject of Count IV. There is no lack of notice here, nor are there any "new issues not implicated in the original Complaint." Defts. Mem. at 18. Defendant faults Plaintiffs for pleading additional details in the ACAC concerning the FCRA-deficient procedures with which it administers the ESTEEM system, Defts. Mem. at 17-18, but, as the relation-back rule instructs, "[t]he details may vary, but the factual core of the two complaints is the same." *Spicer v. Villanova Univ.*, 2006 WL 3486465 at *2.

Defendant cannot realistically claim that it did not anticipate the Plaintiffs might raise the claims alleged in Counts III and IV. Rather, having for years refused to provide Plaintiffs with copies of their "admission statements"—which were expressly demanded for the purpose of raising these claims—Defendant now argues that the admission statements were unnecessary for framing these claims and that Plaintiffs could have pled the exact same claims originally. *See* Defts. Mem. at 18, n.3 ("Plaintiffs indisputably knew that the Esteem reports contained allegedly inaccurate information about their respective theft incidents when they received their Esteem reports in 2009."). Putting aside the logical weakness of claiming that it is just as easy to file a federal law suit challenging the accuracy of a statement without having a copy of the statement as it would be after getting a copy, any argument accusing Plaintiffs of some sort of improper delay has no place in a relation back analysis. As the Third Circuit has directed, "'Undue delay'

---

[6] See, e.g., Complaint, ¶ 66 ("Plaintiff Goode responded to Defendant with a second letter in which she asked for the offered description of the supposed reinvestigation conducted by Defendant and again asked for copies of 'whatever information you are relying on.' She concluded: 'I cannot disprove information without knowing what it is, and where it came from.'"); Complaint, ¶ 121 ("Defendant is systematically undermining the possibility of meaningful consumer disputes by requiring consumers to dispute the accuracy of 'admission statements' it does not let consumers see.")

is a reason to deny leave to amend but not to deny relation back." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006). "There is no allowance in Rule 15(c) for inquiry into a party's delay in moving for leave to amend. Such equitable considerations are relevant to whether leave to amend should be granted under Rule 15(a), but do not relate to any of the enumerated conditions of Rule 15(c). *Id.* (citations omitted).

### 3.   Counts III and IV Are Also Timely Under The Doctrine Of Equitable Tolling

The doctrine of equitable tolling provides an additional basis for rejecting Defendant's assertion that Counts III and IV of Plaintiffs' ACAC are untimely. "Equitable tolling, if available, can rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff has 'been prevented from filing in a timely manner due to sufficiently inequitable circumstances.' " *Santos ex. rel. Beato v. U. S.*, 559 F.3d 189, 197 (3d Cir. 2009) (*quoting Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999)). One such circumstance is "where the plaintiff in some extraordinary way has been prevented from asserting his or her rights." *Id.* This is such a case.

The Court has already ruled that: "The admission statement is the most important part of the file because it is the only evidence of the theft incident underlying the report and adjudication. There is no way for plaintiffs to challenge inaccurate information without the admission statement." Slip Op. at 19-20. Given that determination, Defendant should be equitably estopped from this extraordinary attempt to use the FCRA statute of limitations to gain a tactical advantage from its deliberate decision—extending over more than two years and after multiple requests for the statements—to force consumers to dispute the accuracy of admission statements they were not allowed to see. The statute was tolled as of Plaintiffs' 2009 dispute

14

letters in which they contested the accuracy of their respective reports and asked Defendant to allow them the opportunity to frame those contests with the admission statements in hand.

## IV.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court deny the Defendant's Motion Strike Count I of Plaintiffs' Amended Complaint and deny Defendant's Motion to Dismiss Plaintiffs' Amended Complaint and enter an Order requiring Defendant to file an Answer to the Amended Complaint within fourteen (14) days.

Respectfully submitted,

FRANCIS & MAILMAN, P.C.

/s/ *James A. Francis*
JAMES A. FRANCIS
ERIN A. NOVAK
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

LANGER GROGAN & DIVER, P.C.
IRV ACKELSBERG
1818 Arch Street, Ste. 4130
Philadelphia, PA 19103
(215) 320-5703

CONSUMER LITIGATION ASSOCIATES, PC
Leonard A. Bennett
12515 Warwick Boulevard # 101
Newport News, VA 23606
(757) 930-3660

COMMUNITY LEGAL SERVICES, INC.
SHARON M. DIETRICH
NADIA HEWKA
1424 Chestnut Street
Philadelphia, PA 19102
(215) 981-3700

Dated: May 21, 2012          *Attorneys for Plaintiffs and the Class*

15

## CERTIFICATE OF SERVICE

I, **JAMES A. FRANCIS**, do hereby certify that on this 21st day of May, 2012, I caused a true and correct copy of Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss Plaintiffs' Amended Complaint to be served by ECF notification upon the following:

Andrew J. Soven, Esq.
**REED SMITH, LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19106

*Attorneys for Defendant*
*LexisNexis Risk & Information Analytics Group, Inc.*

**FRANCIS & MAILMAN, P.C.**


/s/ James A. Francis
JAMES A. FRANCIS
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

*Attorneys for Plaintiffs and the Class*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KEESHA GOODE and VICTORIA GOODMAN, on behalf of themselves and others similarly situated,**     **Plaintiffs,** <br><br> **v.** <br><br> **LEXISNEXIS RISK & INFORMATION ANALYTICS GROUP, INC.,**     **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **Civil Action No. 11-2950** <br><br>    **CLASS ACTION** |

## ORDER

AND NOW, this _____ day of _____ 2012, upon consideration of Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss Plaintiffs' Amended Complaint, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss Plaintiffs' Complaint is DENIED and Defendant LexisNexis Risk & Information Analytics Group, Inc. shall answer Plaintiffs' Amended Complaint within fourteen (14) days.

_____
JAN E. DUBOIS, U.S.D.C.