IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEESHA GOODE and VICTORIA GOODMAN, on Behalf of Themselves and Others Similarly Situated, | : : : : | CIVIL ACTION |
| Plaintiffs, | : : | NO. 2:11-cv-2950-JD |
| v. | : : | |
| LEXISNEXIS RISK & INFORMATION ANALYTICS GROUP, INC., | : : : | |
| Defendant. | : | |

**DuBOIS, J.**                                                                                                          June 25, 2012

**M E M O R A N D U M**

**I. INTRODUCTION**

In this putative class action, plaintiffs allege that defendant's system for conducting employment-related background checks violates the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1618 <u>et seq</u>. Plaintiffs are employees who were fired by their employers, and potential employees who were denied employment, based on background checks that defendant conducted for those employers.

On March 22, 2012, the Court granted in part and denied in part defendant's first Motion to Dismiss. Thereafter, the Court granted plaintiffs leave to amend their Class Action Complaint ("First Complaint"). Plaintiffs filed an Amended Class Action Complaint ("Amended Complaint") on April 23, 2012, and defendant filed a second Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(f) seeking dismissal of the new counts in the Amended Complaint and asking the Court to strike the class action allegations in Count I of the Amended

Complaint. For the reasons stated below, the Court denies defendant's second Motion to Dismiss.

## II. BACKGROUND[1]

### A. The "Esteem" System

Defendant operates a proprietary system called "Esteem" that "helps organizations identify applicants with [a] history of theft or fraud." (Am. Compl. ¶ 11.) Subscribing member employers ("members") pay a fee based on the number of their employees, and in return, defendant performs background checks on current and potential employees. (Esteem Member: Service Agreement, Am. Compl. Ex. A.) Members must also give defendant new records of theft incidents involving their own employees and customers. (Am. Compl. ¶ 16.) Members may only submit incident reports in two situations: (1) if the member referred the incident for criminal prosecution, or (2) if the employee admits guilt. (Id. ¶ 17.) If, as is alleged in this case, the employee admits guilt, the member employer includes an "admission statement"—a statement describing the incident and admitting guilt signed by the person who committed the theft—with the report. (Id. ¶ 19.)

When a member requests information about a current or potential employee, defendant searches its system for possible matches between the employee's personal information and a record on file. (Id. ¶ 24.) If a match is found, defendant "verifies" the match by comparing the personal data from the inquiry with the incident data and the admission statement supporting the incident. (Id.) Once a match is verified, defendant classifies the employee in accordance with adjudication scores agreed upon by defendant and the member ("adjudication"). (Id. ¶ 41.) If the employee falls below a certain threshold, defendant assigns the employee a "noncompetitive"

---

[1] As required on a motion to dismiss, the Court takes all plausible factual allegations contained in plaintiffs' Complaint to be true.

score. (Id.) Defendant then generates a "report" detailing the match and the adjudication and sends the report to the inquiring member. (Id. ¶ 27.) The admission statement is not provided as part of the report. (Id. ¶ 28.)

The FCRA requires, inter alia, that before taking any "adverse action" against an employee, the person taking such action must send the employee a copy of the report and a notice of the consumer's rights under the FCRA. 15 U.S.C. § 1681b(b)(3). As part of the service provided to members, defendant sends these "pre–adverse action letters" on members' letterhead to employees or potential employees whose information results in a match after it completes the adjudication and sends the report to the member. (Id. ¶¶ 43, 44, 46.) Defendant includes a copy of the report with the pre–adverse action letter, but not a copy of the admission statement. (Id. ¶ 46.) The pre–adverse action letter also contains a disclaimer that defendant "did not participate in any employment decision and will be unable to provide any specific reasons as to why [the employer] may choose to take an adverse employment action." (Pre–Adverse Action Letter, Am. Compl. Ex. B.) Several days after it sends the pre–adverse action letter, defendant sends the employee a final "adverse action letter" on the member's letterhead. (Am. Compl. ¶ 44.)

In the Amended Complaint, plaintiffs allege that defendant failed to "follow reasonable procedures to assure maximum possible accuracy" of the files in the Esteem system. (Id. ¶ 136.) Plaintiffs point out that "[d]efendant has few policies and procedures governing employer practices regarding the form, content, and quality of contributed admission statements." (Id. ¶ 137.) Rather, member employers are free to submit admission statements in any form; defendant does not require that there be an "express admission" in the admission statement. (Id. ¶ 139.)

Plaintiffs also allege that defendant does not conduct a "reasonable reinvestigation" of information in an employee's file if the employee contacts defendant to contest the accuracy of that information. (Id. ¶ 153.) Rather, defendant "disregards the gravity of the reinvestigation obligation." (Id.)

**B. Facts Pertaining to Plaintiff Keesha Goode**

Plaintiff Keesha Goode worked as a customer service representative and cashier in a Forman Mills store from November 2006 to October 2008. (Id. ¶ 51.) Forman Mills is a subscribing member of Esteem. (Id. ¶ 52.) Forman Mills fired Ms. Goode in October 2008 based upon an accusation that she committed a theft. (Id. ¶ 56.) Forman Mills submitted an incident report to defendant following Ms. Goode's termination. (Id. ¶ 57.) The incident report contained an admission statement that Ms. Goode signed. (Id.) Forman Mills did not inform Ms. Goode that it was submitting the admission statement to defendant. (Id. ¶ 58.)

In May 2009, Ms. Goode applied for a job at a store owned by the Family Dollar Stores chain. (Id. ¶ 60.) Family Dollar Stores decided to hire Ms. Goode, provided that she passed an employment background screening conducted by defendant. (Id. ¶ 61.) Soon after applying, she received a pre–adverse action letter from defendant telling her that it had matched her information to the incident report Forman Mills submitted in October 2008. (Id. Exs. B, C.) The letter did not contain a copy of the admission statement. (Id. ¶ 68.) The pre–adverse action letter was on Family Dollar Stores' letterhead, but it was actually sent by defendant pursuant to the Esteem member services agreement between defendant and Family Dollar Stores. (Id. ¶ 65.) The letter advised Ms. Goode to contact defendant LexisNexis if she wished to contest "the accuracy or completeness of any of the information provided by [defendant]." (Id. Ex. B.)

4

Some time thereafter, Ms. Goode sent defendant a letter requesting her entire "file" and disputing the alleged theft from Forman Mills. (Id. ¶ 69, Ex. D.) Defendant responded with a letter dated August 6, 2009, stating that defendant had reinvestigated the incident and that "the original information provided on the background report was reported accurately." (Id. ¶ 70, Ex. E.) Attached to the letter was a copy of the same report that defendant had supplied to Ms. Goode in the pre–adverse action letter. (Id.) Ms. Goode then sent a second letter requesting copies of "whatever information you are relying on." (Id. ¶ 71, Ex. F.) She did not receive a response from defendant. (Id. ¶ 67.) It was only after the instant action was filed that defendant provided Ms. Goode with a copy of her admission statement relating to the Forman Mills incident. (Id. ¶ 73, Ex. G.)

Family Dollar Stores did not hire Ms. Goode, and she was "denied other job opportunities with any of the hundreds of [member] employers." (Id. ¶ 74.) Ms. Goode alleges that she suffered lost income, "humiliation, anxiety, anguish and other forms of emotional harm and distress over being branded a thief." (Id. ¶ 75.)

**C. Facts Pertaining to Plaintiff Victoria Goodman**

From June 2005 to the summer of 2006, Ms. Goodman worked as a cashier and stock person at a Dollar General store. (Id. ¶ 76.) In the summer of 2006, her supervisor informed her that Dollar General was investigating her in relation to a theft and that she should go home. (Id. ¶ 78.) Although Ms. Goodman does not recall signing anything during the investigation of the incident, Dollar General submitted to defendant an admission statement with Ms. Goodman's signature. (Id. ¶¶ 78, 80.) Dollar General never informed her of the outcome of its investigation, and Ms. Goodman applied and was approved for unemployment compensation benefits. (Id. ¶¶ 82, 83.)

5

On October 2, 2006, Ms. Goodman began work as a cashier at a Rite Aid store. (Id. ¶ 85.) In November 2009, she applied for a promotion. (Id. ¶ 86.) After deciding to promote Ms. Goodman, Rite Aid submitted an inquiry to the Esteem system. (Id. ¶ 88.) Defendant verified a match in its system for Ms. Goodman related to the Dollar General incident, and Rite Aid fired her on November 30, 2009. (Id. ¶¶ 89, 90.) On December 2, 2009, defendant sent her a pre–adverse action letter on Rite Aid's letterhead with the report attached. (Id. ¶ 91, Exs. G, H.) Defendant sent Ms. Goodman a final adverse action letter on Rite Aid's letterhead on December 7, 2009. (Id. ¶ 98, Ex. J.)

Ms. Goodman wrote to defendant in December 2009 disputing the report. (Id. ¶ 100.) Defendant responded on December 22, 2009, stating that it had "completed [its] reinvestigation of the disputed information and . . . verified that the original information provided on the background report was reported accurately." (Id. ¶ 101, Ex. L.) Ms. Goodman contacted Community Legal Services, which sent defendant a request for Ms. Goodman's admission statement. (Id. Ex. M.) Defendant did not respond. (Id. ¶ 103.) Ms. Goodman later filed a union grievance and was reinstated as a cashier at Rite Aid. (Id.)

Defendant attached Ms. Goodman's admission statement to its first Motion to Dismiss. The admission statement appears to contain two different sets of handwriting. (Id. ¶ 104, Ex. N.) The first describes the alleged incident. (Id. Ex. N.) The second states, "I really thought I bought the fan," and denies that she intended to steal it. (Id.)

Ms. Goodman claims that she suffered damages in the form of lost income during the six months she was unemployed after Rite Aid fired her and in the difference between the income she would have received as a supervisor and what she received as a cashier after she was reinstated. (Id. ¶ 105.) Ms. Goodman also claims that she suffered "humiliation, anxiety, anguish

6

and other forms of emotional harm and distress over being treated as a thief by her existing employer." (Id. ¶ 106.)

### D. Procedural History

In the First Complaint, plaintiffs alleged that defendant violated two separate provisions of the FCRA. In Count I, plaintiffs alleged that defendant violated 15 U.S.C. § 1681b(b)(3) because defendant had already taken an adverse action against plaintiffs—the adjudication—when it sent them the pre–adverse action letter. In Count II, plaintiffs alleged that defendant violated 15 U.S.C. § 1681g(a) when it refused to give plaintiffs copies of their admission statements upon request. Plaintiffs alleged willful violations of both sections under 15 U.S.C. § 1681n and sought statutory damages, punitive damages, and reasonable attorney's fees and costs.

By Memorandum and Order of March 22, 2012, the Court granted in part and denied in part defendant's first Motion to Dismiss. Goode v. LexisNexis Risk & Info. Analytics Grp., Inc., No. 2:11-CV-2950, 2012 WL 975043 (E.D. Pa. Mar. 22, 2012). The Court held that the First Complaint pled facts sufficient to state a claim for violations of both §§ 1681b(b)(3) and 1681g(a). However, the Court concluded that the First Complaint failed to state a claim for a willful violation of § 1681b(b)(3) under the standard that the Supreme Court announced in Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 69–70 (2007).

Plaintiffs filed the Amended Complaint on April 23, 2012. The Amended Complaint alters the allegations in Count I by asserting a negligent violation of § 1681b(b)(3), for which plaintiffs argue they are entitled to actual damages under § 1681o, rather than statutory damages

7

for a willful violation under § 1681n.[2] The Amended Complaint also includes two new claims: First, in Count III, the named plaintiffs allege that defendant violated 15 U.S.C. § 1681e(b) by failing to "follow reasonable procedures designed to assure maximum possible accuracy" of their Esteem files. (Am. Compl. ¶ 136.) Second, in Count IV, the named plaintiffs allege that defendant violated 15 U.S.C. § 1681i by failing to conduct a "reasonable reinvestigation" of the alleged theft incidents when the named plaintiffs disputed those incidents. Plaintiffs seek actual damages, punitive damages, and reasonable attorney's fees and costs under 15 U.S.C. §§ 1681n and 1681o for Counts III and IV.[3]

---

[2] 15 U.S.C. § 1681n states,
> Any person who <u>willfully</u> fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
> (1) . . . any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; . . .
> (2) such amount of punitive damages as the court may allow; and
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

(emphasis added).

15 U.S.C. § 1681o states,
> Any person who is <u>negligent</u> in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
> (1) any actual damages sustained by the consumer as a result of the failure; and
> (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

(emphasis added).

[3] Count II remains unchanged in the Amended Complaint and is not at issue in defendant's second Motion to Dismiss.

### III. LEGAL STANDARD

#### A. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a civil plaintiff must allege facts that "'raise a right to relief above the speculative level.'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

In Twombly, the Supreme Court used a "two-pronged approach," which it later formalized in Iqbal. Iqbal, 556 U.S. at 679–80; Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Under this approach, a district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." Twombly, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. Iqbal, 556 U.S. at 679. The court must then assess "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s] . . . to determine" whether it states a plausible claim for relief. Id. at 680.

#### B. Motion to Strike Under Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D)

Federal Rule of Civil Procedure 12(f) provides, "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "'The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid

9

unnecessary forays into immaterial matters.'" Natale v. Winthrop Res. Corp., No. 07-4686, 2008 WL 2758238, at *14 (E.D. Pa. July 9, 2008) (quoting McInerny v. Moyer Lumber & Hardware, Inc., 244 F. Supp. 2d 393 (E.D. pa. 2002)). Relief under Rule 12(f) is generally disfavored and will be denied unless the allegations "'have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'" Id. (quoting River Road Devel. Corp. v. Carlson Corp., No. 89-7037, 1990 WL 69085, at *2 (E.D. Pa. May 23, 1990)).

Under Federal Rule of Civil Procedure 23(d)(1)(D), a court adjudicating a class action may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." However, courts rarely grant motions to strike under Rule 23(d)(1)(D) prior to class discovery, see P.V. ex rel. Valentin v. Sch. Dist. of Phila., No. 2:11-CV-04027, 2011 WL 5127850, at *3 (E.D. Pa. Oct. 31, 2011), doing so only where "[n]o amount of additional class discovery will alter th[e] conclusion" that the class is not maintainable, Thompson v. Merck & Co., Inc., Nos. 01-1004, 01-1328, 01-3011, 01-6029, 02-1196, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004).

**IV. DISCUSSION**

Defendant makes two arguments in its second Motion to Dismiss. First, defendant argues that the Court should strike the class allegations in Count I of the Amended Complaint. Second, defendant argues that Count I, Count III, and Count IV are time barred. This Memorandum will address each argument in turn.

### A. Class Allegations in Count I[4]

Defendant argues that it is appropriate to strike the class allegations in Count I because "it is apparent from the allegations in the [Amended C]omplaint that a class action cannot be maintained." (Mem. Law Supp. Def. LexisNexis Screening Solutions Inc.'s Mot. Strike Class Allegations Dismiss Counts I, III and IV Am. Compl. ("Def.'s Br.") 2.) For the reasons that follow, the Court concludes that defendant's request to strike the class allegations is premature.

In the Amended Complaint, plaintiffs propose a "Pre–Adverse Action Sub-Class" consisting of people "to whom LexisNexis mailed a Pre-Adverse Action Notice on the letterhead of a third-party employer customer." (Am. Compl. ¶ 107.) Because Count I seeks actual damages under 15 U.S.C. § 1681o, plaintiffs propose the Pre–Adverse Action Sub-Class as a liability-only class under Rule 23(c)(4), whereby damages for individual class members would be determined only after plaintiffs establish defendant's liability under § 1681b(b)(3) on a class-wide basis. (Am. Compl. ¶ 125; Resp. Opp'n Def. LexisNexis Risk & Info. Analytics Group, Inc.'s Mot. Dismiss Pls.' Am. Compl. ("Pls.' Resp.") 9 n.4.)

"In rare cases where it is clear from the complaint itself that the requirements for maintaining a class action cannot be met, a defendant may move to strike the class allegations before a motion for class certification is filed." NBL Flooring, Inc. v. Trumball Ins. Co., No. 10-4398, 2011 WL 4481918, at *1 (E.D. Pa. Sept. 27, 2011). However, district courts within the Third Circuit typically conclude that motions to strike class action allegations filed before

---

[4] As described above, supra Section II.D, and more fully in the Court's March 22, 2012, Memorandum, Goode, 2012 WL 975043, at *3–10, plaintiffs claim in Count I that the Esteem system violates 15 U.S.C. § 1681b(b)(3) because defendant takes an "adverse action" when it "adjudicates" the employees as "noncompetitive." Defendant sends the pre–adverse action letter to the employees after it adjudicates them, and thus, defendant runs afoul of § 1681b(b)(3)'s requirement that it notify the employees before taking an adverse action.

11

plaintiffs move for class certification are premature. See Valentin, 2011 WL 5127850, at *3–4. As another court in this District observed,

> [a] motion to strike class allegations under Rule 23(d)(4) seems, for all practical purposes, identical to an opposition to a motion for class certification. Several district courts have held that Rule 23(d)(4) motions to strike class allegations are premature and that the proper avenue is to oppose the plaintiff's motion for class certification.

Korman v. Walking Co., 503 F. Supp. 2d 755, 762 (E.D. Pa. 2007) (citations omitted); see also Martin v. Ford Motor Co., 765 F. Supp. 2d 673, 680–81 (E.D. Pa. 2011); NBL Flooring, 2011 WL 4481918, at *1; Mills v. Serv. First Credit Union, No. 4:11-CV-686, 2011 WL 3236313 (M.D. Pa. July 28, 2011); Vlachos v. Tobyhanna Army Depot Fed. Credit Union, No. 3:11-CV-0060, 2011 WL 2580657 (M.D. Pa. June 29, 2011). This is because, "to determine if the requirements of Rule 23 have been satisfied, a district court must conduct a 'rigorous analysis,' [in which it] 'may delve beyond the pleadings to determine whether the requirements for class certification are satisfied.'" Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93 (3d Cir. 2011) (quoting In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309, 316 (3d Cir. 2008)). Discovery and full briefing on the merits of class certification are typically required to conduct this "rigorous analysis." See Valentin, 2011 WL 5127850, at *4; NBL Flooring, 2011 WL 4481918, at *1; see also Andrews v. Home Depot U.S.A., Inc., No. 03CV5200, 2005 WL 1490474, at *3 (D.N.J. June 23, 2005) ("'[T]he shape and form of a class action evolves only through the process of discovery.'" (quoting Abdallah v. The Coca-Cola Co., No. 1:98CV3679, 1999 WL 527835, at *1 (N.D. Ga. 1999))). Thus, it is "rare" for a court to strike class allegations prior to discovery. Valentin, 2011 WL 5127850, at *5; accord NBL Flooring, 2011 WL 4481918, at *1.

In response, defendant argues that this is one of the rare cases in which no amount of discovery will demonstrate that the class can be maintained. See Thompson v. Merck & Co., Inc., Nos. 01-1004, 01-1328, 01-3011, 01-6029, 02-1196, 2004 WL 62710 (E.D. Pa. Jan. 6, 2004). In support of this, defendant cites several cases that it claims foreclose certification of a liability-only class when plaintiffs seek actual damages in an FCRA case. However, all of the cases defendant cites were decided at the class-certification stage, not on a motion to strike. Moreover, only one case that defendant cites is arguably on point.[5] In Harper v. Trans Union, LLC, the plaintiffs brought a putative class action under 15 U.S.C. § 1681e(b) alleging that the defendant had generated credit reports that inaccurately stated that the plaintiffs had filed for

---

[5] The others are easily distinguishable. In Chakejian v. Equifax Information Services, LLC, the defendant argued that the named plaintiff's "election to forego actual damages or a negligence claim under the FCRA make[s] him an inadequate representative of the class because his interests conflict with the interests of potential class members who may have actual damages in an amount exceeding the statutory cap of $1,000.00." 256 F.R.D. 492, 499 (E.D. Pa. 2009). In concluding that the named plaintiff met the adequacy prong of Rule 23(a) despite electing to forego actual damages, the court noted, "If the plaintiff were required to pursue actual damages in this case, individual damages issues would quickly overwhelm the common questions and the suit would become unmanageable and uncertifiable." Id. However, the plaintiffs in Chakejian did not propose a liability-only class, and the Court's hypothetical argument was dicta because the plaintiffs did not, in fact, seek actual damages.

In another case defendant cites, Leggee v. Nextel Communications, Inc., the court refused to certify a class because calculating actual damages involved an individualized inquiry for each plaintiff. No. 02-8676, 2004 WL 5235587 (C.D. Ca. June 25, 2004). However, the plaintiffs in that case did not propose to limit the class action to the question of liability until after defendants filed their brief. The court noted, "In their Reply and at oral argument, [p]laintiffs offered that the Court could address this issue by certifying a class for the purpose of determining liability only. While this may be an attractive and more manageable option, the Court declines to fashion such a class without [d]efendants having been provided an opportunity to brief the issue." Id. at *8 (citations omitted).

Finally, defendant cites Williams v. Telespectrum, Inc., No. 05-853, 2007 WL 6787411 (E.D. Va. June 1, 2007). The plaintiffs in Williams sought to certify a class for liability and statutory and punitive damages. The court refused to certify the class because it would be impossible to determine on a class-wide basis whether punitive damages were reasonable under the Due Process Clause given the different amounts of actual damages the plaintiffs suffered. Id. at *6–7. Plaintiffs in this case do not seek punitive damages under Count I, and thus, Williams is inapposite.

bankruptcy protection. No. 04-3510, 2006 WL 3762035, at *1 (E.D. Pa. Dec. 20, 2006). The plaintiffs in Harper claimed actual damages for a negligent violation of § 1681e(b) and sought class certification for liability only. Id. The Harper court ruled that, to establish a violation of § 1681e(b), a plaintiff must prove: (1) that defendant failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports, (2) that the information in plaintiff's consumer report was inaccurate, (3) that the plaintiff suffered damages, and (4) that those damages were caused by the inaccurate information. Id. at *8. These elements are separate from proof of the precise amount of damages sustained by each individual class member, which the plaintiffs in Harper sought to do at a later stage of the proceedings after liability had been determined. The Harper court concluded that, although the first element may be appropriate for class-wide determination, the predominance and superiority prongs of the Rule 23(b)(3) analysis were not met because "proof of [the latter three] elements, though traceable to defendants' conduct and policies, will require highly individualized proofs as to the injuries suffered by the putative class members." Id. at *8–9.

This case is distinguishable from Harper in a number of ways. First, § 1681e(b) requires a showing that the information in the consumer reports was incorrect. Id. at *8. This required each individual class member to show that he or she did not, in fact, file for bankruptcy protection. Plaintiffs in this case are not required to make such a showing. Rather, liability revolves mainly around whether defendant's policy of sending out pre–adverse action letters after it conducts the adjudication of the employees violates § 1681b(b)(3). Thus, determining liability in this case does not require the degree of individualized analysis as was present in Harper.

Second, the proposed class in Harper consisted of anyone whose credit report inaccurately showed that he or she had filed for bankruptcy protection. Thus, proving that the

plaintiffs in Harper were harmed by that inaccuracy involved an extra step: not everyone with inaccurate information on his or her consumer report necessarily suffers damage. In this case, although plaintiffs must prove causation and damages for Count I, see, e.g., Gagliardi v. Equifax Info. Servs., LLC, No. 09-1612, 2011 WL 337331, at *12 (W.D. Pa. Feb. 3, 2011), the alleged violation is necessarily linked to a decision to fire, not hire, or not promote employees. (See Am. Compl. ¶¶ 41–45.) Under such allegations, unlike Harper, plaintiffs must be given an opportunity to establish that defendant's alleged violation of § 1681b(b)(3) caused damages to all proposed class members.

Accordingly, the Court concludes that this case is not among "the rare few where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." Landsman, 640 F.3d at 93 n.30; cf. Woodard v. FedEx Freight E., Inc., 250 F.R.D. 178, 182 (M.D. Pa. 2008) (striking class allegations because the plaintiffs made those allegations in a case involving the Fair Labor Standards Act, to which Rule 23 does not apply). That part of defendant's second Motion to Dismiss which asks the Court to strike the class allegations in Count I is denied without prejudice to defendant's right to raise the issue in opposition to a motion for class certification.

### B. Statute of Limitations

Defendant argues that Counts I, III, and IV are time-barred under 15 U.S.C. § 1681p because plaintiffs asserted these claims for the first time in their Amended Complaint, more than two years after the events giving rise to the claims took place. For the reasons stated below, the Court concludes that all three claims relate back to the date of its First Complaint and thus are not time-barred.

### 1. Relation-Back Standard

Under Federal Rule of Civil Procedure 15(c)(1)(B), "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." As the Third Circuit has stated,

> [A]mendments that restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding pleading fall within Rule 15(c). In essence, application of Rule 15(c) involves a search for a common core of operative facts in the two pleadings. As such, the court looks to whether the opposing party has had fair notice of the general fact situation and legal theory upon which the amending party proceeds.

Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (3d Cir. 2004) (citations omitted). However, an amendment "does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Mayle v. Felix, 545 U.S. 644, 650 (2005).

### 2. Count I

As noted above, supra Section II.D, the First Complaint contained an allegation that defendant willfully violated § 1681b(b)(3). In its March 22, 2012, Memorandum, the Court concluded that plaintiffs had failed to state a claim for a willful violation of § 1681b(b)(3). In the Amended Complaint, plaintiffs amended Count I to allege that defendant negligently violated § 1681b(b)(3). A negligence claim under § 1681b(b)(3) requires a showing of causation and damages, as discussed above. The Amended Complaint thus contains specific allegations relating to those two elements that were not stated as precisely in the First Complaint.

Defendant argues that two groups of allegations are new and thus do not relate back to the First Complaint under Rule 15(c). First, defendant points to paragraphs fifty-eight and

eighty-one of the Amended Complaint, in which plaintiffs allege that the employers did not notify the named plaintiffs that the employer was "submitting information about [plaintiffs] into a nationwide employment database." Defendant argues that "[t]hese allegations have been added to make an argument that LexisNexis negligently affords contributing members with excessive discretion with respect to what they tell consumers about Esteem." (Def.'s Br. 16.) However, these allegations are similar to, albeit more specific versions of, allegations plaintiffs made in the First Complaint. The First Complaint is rife with allegations that defendant conducts little oversight of member employers and affords them "excessive discretion." (See, e.g., First Compl. ¶¶ 22, 30 (alleging that defendant does not adequately oversee the form and submission of admission statements).) More specifically, the First Complaint also alleged that "[t]he consumer is not notified in advance that he is likely to be rejected based on an Esteem report (or may not even know that he is part of a retail theft database)." (Id. ¶ 47.)

Defendant also argues that plaintiffs have added allegations that they were either conditionally hired or conditionally promoted before their employers requested an Esteem report from defendant. (See Am. Compl. ¶¶ 61, 74, 88.) However, the First Complaint contained similar allegations. For example, paragraph forty-three stated that often, "the potential employer has already decided to hire the consumer, conditioned only on the consumer clearing LexisNexis background checks, including a search of the Esteem database." Paragraph forty-five stated, "If the Esteem search is negative, the consumer is hired." These allegations clearly notified defendant that the conditional hiring or promotion of plaintiffs was an issue in the case.

Although the Amended Complaint contains some new allegations, the Court concludes that these allegations merely "amplify the factual circumstances surrounding the pertinent conduct," and thus, defendant "had fair notice of the general fact situation and legal theory upon

17

which" plaintiffs are proceeding. Bensel, 387 F.3d at 310. Thus, Rule 15(c) applies and the allegations in Count I relate back to the date of the First Complaint.

### 3. Count III

Count III makes a claim on behalf of the named plaintiffs for a violation of 15 U.S.C. § 1681e(b), which requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Count III did not appear in the First Complaint. Defendant argues that in making this claim, plaintiffs assert new allegations that are not within the "core of operative facts," Bensel, 387 F.3d at 310, set out in the First Complaint. For the reasons that follow, the Court rejects defendant's argument.

Defendant cites paragraphs 136 through 148 of the Amended Complaint as containing new allegations that should not relate back to the date of the First Complaint. For example, plaintiffs allege in paragraph 137 that defendant "has few policies and procedures governing employer practices regarding the form, content, and quality of contributed admission statements." In paragraph 139, plaintiffs allege that defendant does not require that an "express admission" be contained in the admission statements; in paragraph 145, plaintiffs allege that defendant only requires that the admission statements be verified once.

The First Complaint contained all of these allegations. In the First Complaint, plaintiffs pointed out that defendant inadequately oversees the form and substance of the admission statements. (First Compl. ¶¶ 22, 26, 30.) Further, plaintiffs alleged flaws in the verification process and review of the admission statements. (Id. ¶¶ 27, 29.) Thus, the Court concludes that defendant had notice of the operative facts underlying the claim plaintiffs make in Count III, and Count III relates back to the date of the First Complaint under Rule 15(c).

### 4. Count IV

In Count IV, the named plaintiffs allege that defendant violated 15 U.S.C. § 1618i, which requires a credit reporting agency to conduct a "reasonable reinvestigation" of any disputed "item of information contained in a consumer's file" if such information is "disputed by the consumer and the consumer notifies the agency directly." Count IV did not appear in the First Complaint. Defendant argues that Rule 15(c) does not apply and Count IV does not relate back to the filing of the First Complaint. For the reasons stated below, the Court rejects defendant's argument.

Defendant focuses on paragraph 153 of the Amended Complaint, in which plaintiffs allege that defendant "disregards the gravity of the reinvestigation obligation," resolves all ambiguities against the employee, and uses a "standard form called a 'Disputed Accuracy by Consumer' form." While these specific allegations are new to the Amended Complaint, they do no more than "amplify the factual circumstances surrounding the pertinent conduct," Bensel, 387 F.3d at 310, alleged in the First Complaint. The First Complaint alleged deficiencies in the reinvestigation procedure. (First Compl. ¶¶ 65–68, 92–94.) For example, defendant wrote letters to both named plaintiffs that offered to provide "a description of the procedure used to reinvestigate the disputed information." (Id. Exs. E, K.) When plaintiffs wrote to defendant to obtain that description, defendant never responded. (Id. ¶¶ 67, 94.) Further, plaintiffs alleged in the First Complaint that "[d]efendant is systematically undermining the possibility of meaningful consumer disputes by requiring consumers to dispute the accuracy of 'admission statements' it does not let consumers see." (Id. ¶ 121.)

The First Complaint contained allegations sufficient to notify defendant that defendant's reinvestigation procedures were an issue in the case. While the new allegations in the Amended

Complaint are more specific, they do not "differ in both time and type" from the claims asserted in the First Complaint. Mayle, 545 U.S. at 650. Thus, the Court concludes that the allegations in Count IV relate back to the filing of the First Complaint under Rule 15(c).[6]

## V. CONCLUSION

    For the reasons stated above, the Court denies defendant's second Motion to Dismiss.

    An appropriate Order follows.

---

[6] Defendant argues strenuously that plaintiffs made a tactical decision to forego their new claims—especially the negligence claim in Count I—in the First Complaint and thus, should not be able to assert these claims now. In support, defendant cites In re Asbestos Products Liability Litigation (No. VI), No. MDL 875, 2009 WL 2412442, at *7 (E.D. Pa. Aug. 5, 2009), in which the court held that Rule 15(c) did not apply where the plaintiff expressly disclaimed federal claims in a prior motion to remand to state court and then later sought to amend her first complaint to add those federal claims. The Asbestos case is distinguishable for a number of reasons. First, the Asbestos court cited four ways in which the new claims differed substantially from the old claims and were "'supported by facts that differ in both time and type from those the original pleading set forth.'" Id. (quoting Mayle, 545 U.S. at 650). As explained above, the new claims in this case are supported by facts that do not "differ in both time and type from those [in] the original pleading," id., but instead simply "amplify" the facts of the first complaint, Bensel, 387 F.3d at 310.
    Second, in Asbestos, the plaintiff expressly "'waived [her] federal claims now and forever'" in her brief supporting her motion for remand and in the first complaint. Asbestos, 2009 WL 2412442, at *7 (alteration in original) (quoting plaintiff's brief in support of her motion for remand). There was no such express waiver in this case.
    Finally, the named plaintiffs in this case did not receive copies of their admission statements until well after this action was filed. The Court declines to rule on whether the admission statements were necessary to assert the new claims in the Amended Complaint but notes that the facial deficiencies in Ms. Goodman's admission statement are related to the allegations in Counts III and IV, in which plaintiffs assert claims based on inaccurate information and inadequate reinvestigation.