## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **KEESHA GOODE and VICTORIA GOODMAN, on behalf of themselves and others similarly situated,** Plaintiffs, | ) ) ) ) ) | **C.A. No. 11-2950** |
| | ) | **CLASS ACTION** |
| **v.** | ) ) | |
| **FIRST ADVANTAGE LNS SCREENING SOLUTIONS, INC., f/k/a LEXISNEXIS SCREENING SOLUTIONS, INC.,** Defendant. | ) ) ) ) ) ) | |

### PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

_____

For the reasons set forth in the accompanying Memorandum of Law, Plaintiffs Keesha Goode and Victoria Goodman hereby seek an Order granting Class Counsel Attorneys' Fees and Reimbursement of Expenses, as agreed in the Class Action Settlement Agreement, final approval of which they are also seeking by way of separate motion filed on this date.

In support of this Motion, they reference the separately filed Declarations of Irv Ackelsberg, James A. Francis, Sharon M. Dietrich and Leonard A. Bennett, with the accompanying attachments and exhibits.

Dated:  November 25, 2014                    Respectfully submitted,


                                             _/s/ Irv Ackelsberg_
                                             IRV ACKELSBERG
                                             **LANGER GROGAN & DIVER, P.C.**
                                             IRV ACKELSBERG
                                             1818 Arch Street, Ste. 4130
                                             Philadelphia, PA 19103
                                             (215) 320-5660

**FRANCIS & MAILMAN, P.C.**
JAMES A. FRANCIS
DAVID A. SEARLES
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

**CONSUMER LITIGATION ASSOCIATES, P.C.**
LEONARD A. BENNETT
763 J. Clyde Morris Blvd, Ste 1A
Newport News, VA 23601
(757) 930-3660

**COMMUNITY LEGAL SERVICES, INC.**
SHARON M. DIETRICH
NADIA HEWKA
1424 Chestnut Street
Philadelphia, PA 19102
    (215) 981-3700

*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KEESHA GOODE and VICTORIA GOODMAN, on behalf of themselves and others similarly situated, <br>     Plaintiffs, <br><br> v. <br><br> FIRST ADVANTAGE LNS SCREENING SOLUTIONS, INC., f/k/a LEXISNEXIS SCREENING SOLUTIONS, INC., <br>     Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 11-2950 <br><br> CLASS ACTION |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

## I.    INTRODUCTION

Plaintiffs Keesha Goode and Victoria Goodman (the "Representative Plaintiffs"), by their undersigned counsel, petition this Court for approval of an award of attorneys' fees and reimbursement of litigation expenses in accordance with the Settlement Agreement in this matter, preliminarily approved by Court Order entered August 1, 2014 (Doc. 66), and now pending final approval.

Class Counsel have devoted their time, skill, and resources to this matter wholly contingent upon a successful outcome, taking significant risks to obtain the result achieved for the Class. As more fully described in their Motion for Final Approval of Class Action Settlement, their efforts have achieved a successful outcome and have resulted in settlement benefits consisting of:

- Injunctive relief, including a suspension of the Esteem system and practice changes that would contractually constrain any future resumption of Esteem by Defendant or any subsequent owner, Settlement Agreement, ¶ 4.1;

- Distribution of $2.365 million in statutory damages to the roughly 2,900 members of the D&D Class for the alleged violation of 15 U.S.C. § 1681g(a), producing checks in the amount of $820 for each class member, *id.* at ¶ 4.3;

- Every class member will be provided, upon request, a copy of his or her VAS and retains the right to sue Defendant individually for any actual damages suffered as a result of the practices at issue here, *id.* at ¶ 4.2;

- An additional 26,000 "PAA Class" members received individual mailed notice, notifying them of the injunctive relief, including the suspension of Esteem; of their right to obtain their VAS and, like the D&D, the right to sue for actual damages.

As an additional term of the Settlement Agreement, Defendant has also agreed to pay Plaintiffs' reasonable attorneys' fees, costs and out-of-pocket expenses not in excess of $2,000,000 in total, as awarded by this Court, Settlement Agreement, *id.,* ¶ 4.5; individual service awards for the two Class Representatives in the amount of $7,500 each, *id.,* ¶ 4.4 ; and has funded the costs of notice and settlement administration, *id.,* ¶ 2.3.6.

Class Counsel now, as compensation for their achievement and effort, and for accepting the risk that there would be no recovery if they were not successful, request Court approval of the $2 million figure provided in the Settlement Agreement. Having incurred $76,589.46 in out-of-pocket expenses,[1] Counsel request approval of that amount for cost and expenses and the difference, $1,923,410.54, as a reasonable attorney's fee.

As detailed below, the reasonableness of this fee is supported by the risk counsel assumed, the exceptional result they obtained, the substantial work they performed get that result, and the quality of that work. The reaction of the class also supports the fee request. Despite the fact that the class notices expressly informed class members about the $2 million

---

[1] This is the sum of costs incurred by Langer Grogan & Diver ($28,984.36), Francis & Mailman ($43,517.60) and Consumer Litigation Associates (Leonard Bennett) ($4,087.50).

figure for fees and costs included in the Settlement Agreement, not a single objection was filed. Moreover, this was a publicized settlement in the trade press, as well as in the regular news sources, so potential professional objectors, as well, chose not to object.

Because the preferred method for determining a reasonable fee in this kind of a case is the "common fund" method, and because a significant portion of the relief provided to the class is in the form of prospective injunctive relief that had no value assigned to it in the Settlement Agreement, Plaintiffs are submitting two expert reports in support of this Motion. Adding the lowest figure in the value range assigned to the injunctive relief by economist Stanley V. Smith, Ph.D. ($26.6 million) to the $2.365 in distributions to the D&D Class, the monetary value of the relief obtained is about $29 million. The requested fee is approximately 6.5% of that amount. This is well within the range of percentages approved by the courts in similar cases. Using the lodestar "cross-check," this percentage would produce a lodestar multiplier of only 1.3, certainly a modest multiplier for a case involving such a novel theory and such an exceptional result.

## II.   PROCEDURAL HISTORY

The settlement in this matter is the result of several years of discovery, litigation and settlement negotiations.   This case was undertaken and pursued on a contingent basis and represented a significant financial risk for Class Counsel.    A detailed recitation of the background and procedural history of the case is set forth in Plaintiffs' Motion for Final Approval of Class Action Settlement.

## III.   CLASS COUNSELS' FEE REQUEST SHOULD BE APPROVED AS FAIR AND REASONABLE

### A.   Class Counsel Are Entitled To A Reasonable Fee

"[A] thorough judicial review of fee applications is required for all class action settlements." *In re Prudential Insurance Co. Sales Practices*, 148 F.3d 283, 333 (3d Cir. 1998).

The fact that Plaintiffs' fee request is unopposed does not obviate the need for this Court to assess its reasonableness. *See In re Cendant Corp. PRIDES Litig.,* 243 F.3d 722, 730 (3d Cir.2001) (stating that the duty of a court to ensure that fees are proper "exists independently of any objection").

Federal Rule of Civil Procedure 23(h) provides: "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  In this case, fees are authorized by both the Settlement Agreement and the underlying law itself. The FCRA is a fee-shifting statute that mandates the award of reasonable attorney's fees and costs to a prevailing party.  15 U.S.C. § 1681n(a)(3), 1681o(a)(2).

There are two typical methods of calculating reasonable attorneys' fees in class actions – the percentage-of-recovery method and the lodestar method.  *Prudential*, 148 F.3d 283 at 332. As noted by Judge Becker, writing for the Court in *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.* ("*GM Truck Litig.*"), 55 F.3d 768, 821 (3d Cir. 1995), "Ordinarily, a court making or approving a fee award should determine what sort of action the court is adjudicating and then primarily rely on the corresponding method of awarding fees (though there is, as we have noted, an advantage to using the alternative method to double check the fee)." *Id*. (omitting footnote). The lodestar method is commonly applied in statutory fee-shifting cases in order "to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." *Id.* In contrast, the pure "common fund" case is one "not presumed to serve the public interest (as evidenced by the lack of a fee statute), [meaning] there is no social policy reason that demands an adequate fee," just an equitable concern that the class not be unjustly enriched. *Id*.

4

This settlement presents a hybrid case, involving both a common fund and a "socially beneficial" outcome achieved under a statutory directive that a "reasonable" fee be awarded. In such circumstances, where both methods could be chosen, the percentage-of-recovery method is generally favored, because it rewards counsel for success and penalizes counsel for waste or failure, with the lodestar method being used as a "cross-check" for reasonableness. *See In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006), citing *In re Prudential*, 148 F.3d at 333; *In re Rite Aid Corporation Securities Litigation,* 396 F.3d 294, 300 (3d Cir 2005); *Boone v. City of Phila.*, 668 F.Supp.2d 693 (E.D. Pa. 2009); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 193 (E.D. Pa. 2000).[2] Plaintiffs will therefore analyze the reasonableness of the fee here under both approaches, with the recognition, however, of the Third Circuit's stated preference for using the common fund method where possible.

**B.     The Fee Requested Is Reasonable Under A Percentage of Recovery Analysis**

In 1984, the Supreme Court observed that "[i]n the calculation of attorney's fees under the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the value or benefit

---

[2] The percentage of the fund method was adopted by the Third Circuit following the recommendations of a task force it had established in 1984. Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 242 (3d Cir. Oct. 8, 1985) (hereinafter the "First Task Force Report") The findings of the First Task Force were reaffirmed by a Second Task Force appointed by former Chief Judge Becker.  Report of Third Circuit Task Force on the Selection of Class Counsel (Final Report Jan. 2002) (hereinafter the "Second Task Force Report").[2]  *See also* 1 Alba Conte, *Attorney Fee Awards*, §2.02, at 31-32 (2d ed. 1993).  The First Task Force was convened because "[a] number of difficulties [had] been encountered in applying the [Lodestar Method],"  First Task Force Report, 108 F.R.D. at 238.  These were discussed at length in the Report, which concluded that fee awards in common fund cases should be based on a percentage of recovery.  *Id.* at 254-59. The Third Circuit adopted the First Task Force's conclusion.  *See* Second Task Force Report, at 103 ("The Third Circuit, following the recommendations of the 1985 Task Force, has favored the use of the percentage of the fund method of common fund cases"). *See also Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000) (citing extensively to First Task Force).

bestowed on the class." *Blum v. Stenson*, 465 U.S. 866, 900 n.16 (1974).  In this case, the value

bestowed on the class consists of the $2.365 million fund for the benefit of the D&D Class, plus

the value of the injunctive relief, which includes the suspension of Esteem—likely permanent,

according to the Expert Report of Thomas Lawson, Attachment 4 to Declaration of Irv

Ackelsberg—and notice to 26,000 PAA Class members advising them of this change. According

to the Expert Report of Stanley V. Smith, Attachment 5 to the Ackelsberg Decl., this additional

relief itself can be quantified. Using labor data for the retail sector, Dr. Smith was able to

determine that, for a class member who was not able to obtain retail work, the ability to now

apply for employment without the impediment of the Esteem barrier should reduce the class

member's period of unemployment by an average of 20 weeks, producing additional future

earnings of $6,373. Smith Report at 5. For those class members who are working, but at the

lower pay levels which exist at the bottom rung of the retail sector, the ability to return to work

in the higher paying portion of the sector as a result of the Esteem suspension can also be

quantified. They are receiving a monetary benefit Dr. Smith estimates at $1,628 per individual.

*Id*. By aggregating these values and applying discounting factors to reflect current job market

participation rates, Dr. Smith concludes that the injunctive relief will produce, in the aggregate,

value worth between $26.6 million and $104.1 million. *Id*. at 6.

    The monetization of an injunctive component of class settlement is often done, where

possible, in order to enable the reviewing court to apply the preferred percentage-of-recovery fee

method to a figure that more accurately reflects the value of the benefit bestowed on the class. In

*Oh v. AT&T Corp.*, 225 F.R.D. 142, 146 (D.N.J. 2004), a court within this Circuit applied the

percentage-of-recovery model in awarding counsel fees of $3,301,446.00 in a case involving no

cash distribution at all but also including an agreement to provide prospective services to the

class. Finding the value of these services to be $13 million, the Court analyzed and approved the requested fee award as effectively a request for a fee in the amount of 25.3% of the value created. *Id.* at 151-52.  Similarly, in *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 478 (D.N.J. 2008), involving approval of a class action settlement that did produce a substantial distribution fund for the class, the court used the parties "lowest estimated value of the injunctive relief" of the practice changes achieved in the settlement and added that amount to the amount of the cash fund before determining the percentage-of-recovery represented by the requested attorney's fee. *See also Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003) (concluding that district court, without evidentiary basis, erroneously assigned value to injunctive relief, but acknowledging that in the "unusual instance where the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained," it could be considered a component of common fund); *Pokorny v. Quixtar, Inc.,* 2013 WL 3790896, at *1 (N.D. Cal. July 18, 2013), *appeal dismissed* (Sept. 13, 2013) (applying *Staton*, including non-cash component in calculation of size of "common fund").

Plaintiffs propose to use $26.6 million as the value of the non-cash relief provided to the PAA Class, that being the "lowest estimated value," *McCoy v. Health Net, Inc.*, within the $26.6 million to $106.1 million range discussed by Dr. Smith. Adding this figure to the $2.365 in distributions to the D&D Class, the value of the "common fund" is about $29 million. The requested fee of $1,923,410.54 is approximately 6.5% of that amount.[3]

There are ten factors that should be considered by a district court in considering attorney fee awards in percentage-of-recovery cases:  (1) the amount of the value created and the number

---

[3] If the Court were to look only at the $2.365 million in hard money being distributed, the $1,923,410 fee would, if added to that amount, represent a 45% fee.

of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement. *In re Diet Drugs Product Liability Litigation*, 582 F.3d 524, 541 (3d Cir. 2009); *AT&T Corp.*, 455 F.3d at 165, *citing* to *Gunter v. Ridgewood Energy Corporation*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). This is not an exhaustive list; in *Prudential*, the Third Circuit noted several other factors, 148 F.3d at 338, concluding that "[w]hat is important is that the district court evaluate what class counsel actually did and how it benefited the class." *Id*. at 342. The court has also pointed out that "fee award reasonableness factors 'need not be applied in a formulaic way' because each case is different, and in certain cases, one factor may outweigh the rest." *AT&T Corp.*, 455 F.3d at 166, citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005). Counsel's requested fee is reasonable under all important factors.

First, the amount of the value created and the number of persons benefited supports the fee request. This is clearly not a "megafund"[4] case, but there is certainly real value that has been produced for a substantial class. The 2,900 D&D Class members will receive a significant benefit, in the form of direct monetary payments, without the need to submit a claim form or give up their rights to actual damages. The 26,000 PAA Class members have received the

---

[4]   $100 million has been recognized as the "informal marker of a 'very large' settlement." *Ikon,* 194 F.R.D. at 195, quoting *In re Prudential*, 148 F.3d at 339.

benefit of the removal of a tangible barrier to employment in their field of work. According to

Dr. Smith, this relief has produced something more than the "socially beneficial" consequences

presence in typical fee-shifting contexts, *In re GM Trucks*, namely, a concrete job-market benefit

to which an ascertainable monetary value of $26.1 million can be assigned. In common fund

cases, smaller funds logically require a higher percentage fee award than large-fund cases. *See*

*In re Prudential*, 148 F.3d at 339 (noting "inverse relationship" of large settlement to smaller

percentage award); Third Circuit Task Force, 108 F.R.D. at 256 (recommending that percentage

decrease as award increases). Even in large settlements, percentages in the 30% range have been

approved. *Ikon,* 194 F.R.D. at 194 (approving award of fee of 30% of net settlement fund of

$108,915,874). Here, Plaintiffs are requesting a 6.5% percentage in a $29 million case. Even

though small size of the fund would justify a higher, Plaintiffs are only requesting a 6.5% fee.[5]

As noted in the final approval motion, there have been no objections to the settlement out

of the 2,884 Settlement Class members that received the notice. This factor supports approval.

The third factor, counsel's skill and efficiency, supports approval. The quality of

representation is measured by "the quality of the result achieved, the difficulties faced, the speed

and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and

professionalism with which counsel prosecuted the case and the performance and quality of

opposing counsel." *Ikon*, 194 F.R.D. at 194. Here, Plaintiffs' counsel brought a case articulating

---

[5] Even if the Court were not to take into account at all the monetary value of the suspension of
Esteem, and were to reduce the value of the fund to only the $2.365 million in cash distributions,
the percentage would still be within the allowed range for small cases, *i.e.*, 45%. *Boone v. City
of Phila.* (30%); *In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 322 (D.N.J. 1998) (noting
acceptable range in small case as being between nineteen to forty-five percent of a settlement
fund); *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484 (E.D. Pa. 2003) (33 1/3 %); *In re NCO
Fin. Sys.*, 2002 U.S. Dist. LEXIS 17602 (E.D. Pa. Mar. 19, 2002) (43%); *AAMCO Auto.
Transmissions, Inc. v. Taylor*, 82 F.R.D. 405, 407 (E.D. Pa. 1979) (40%).

a theory of recovery that Defendant vigorously challenged, conducted extensive (and contested) discovery, and steered a lengthy and complicated mediation of this matter. Counsel are uniformly accomplished in the fields of consumer and public interest litigation, and are highly experienced and accomplished in FCRA class litigation, in particular. *See* Declarations of Sharon Dietrich, Irv Ackelsberg, James Francis and Leonard Bennett. They have been appointed Class Counsel numerous times, by this Court and others, which is testament to their skill, expertise and reputation.

The fourth factor also supports approval. The litigation was extensive, lasting two and a half years and involving many hours of effort expended in investigation, written discovery, deposition practice, substantive and dispositive motion practice, and mediation negotiations. This case involves potentially complicated issues of class certification, liability and damages which, if pursued, would involve further protracted litigation and possibly trial.

The fifth factor, risk of nonpayment, is neutral.

The sixth factor is the amount of time devoted to the case by Plaintiffs' counsel. As will be discussed below in the context of the lodestar cross-check, Plaintiffs' lodestar for time expended is $1,489,859, *i.e.*, more than ¾ of the fee they are requesting as a percentage of the fund. Because the 1.3 multiplier factor is so modest here, the relationship between the time devoted to the case by counsel and the fee they are requesting is reasonable.

When considering the seventh prong of the *Gunter* analysis, "awards in similar cases," a court looks to cases of similar size, and not necessarily similar subject matter. *See Cendant PRIDES*, 243 F.3d at 737. On both fronts, the settlement is within or below the appropriate range. As mentioned above, percentages in the 19-45% range have been approved. This percentage is 6.5% taking into account the value to the class of the suspension of Esteem. Even

without taking that into account, the fee would be 45% of a much smaller fund. Courts will frequently refer to the lodestar multiplier in determining the reasonableness of a percentage fee within this range, with a multiplier ranging from one to four being considered an indicator of the reasonableness of the percentage. *See, e.g., Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 122 (E.D. Pa. 2005) (citing *Prudential*, 148 F.3d at 341). Here, the multiplier is only 1.3.

The eighth factor, the value of benefits attributable to the efforts of Class Counsel relative to the efforts of other groups, supports approval.  The entirety of the value achieved for the Class was attributable to Class Counsel; no other groups, such as government agencies conducting investigations, were involved in this case.

The ninth factor, the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement, is a non-factor.

The tenth and last factor, any innovative terms of the settlement, supports approval. There are many aspects of this settlement that are innovative. Most importantly, Plaintiffs and their counsel have succeeded in obtaining a complete cessation of any use of the Esteem database in employment background reporting. In the event Defendant or any subsequent purchaser of the database might wish to resume use of Esteem, the practice changes imposed by the Settlement Agreement are so transformative that, according to the Expert Report of Thomas Lawson, that any such resumption is unlikely. The Settlement Agreement was also innovative with regard to the limited scope of the release, which preserves actual damage claims for all class members. It is unique both with regards to that limited release and the magnitude of the statutory damage checks being mailed to the D&D portion of the Class. Declaration of Leonard Bennett.

In summary, Plaintiffs' request for an award of fees and costs calculated as a percentage of the value of the benefit achieved for the Class is reasonable under all the applicable factors.

11

### C.   A Lodestar Analysis Confirms That The Fee Requested is Reasonable

Here, the claim asserted arises under the fee-shifting provisions of the FCRA.   The provision for attorney fees under the FCRA is mandatory as a result of the statutory intent to encourage attorneys to take small claims in order to serve the important public policy behind the statute. 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

Counsel faced a substantial risk, particularly with regard to the certification of an ascertainable class and they bore the burden of a delay in receiving attorneys' fees and reimbursement for their expenses because of the contingent nature of their services.   Despite this risk, they rendered quality services and obtained an excellent result for the Class through the settlement.   Further, the result obtained benefits not only the members of the settlement class but also the public at large, which is an additional significant consideration.   MANUAL FOR COMPLEX LITIGATION, THIRD, § 14.13, p. 198.

The lodestar and expenses for counsel here as described in counsels' respective Declarations is as follows: for Langer Grogan & Diver, P.C., $633,781.00 in fees, reflecting 1,053 hours of attorney time, and costs of $28,984.36 (*see* Attachment 2 to Declaration of Irv Ackelsberg); for Francis & Mailman, P.C., $532,299.00 in fees, reflecting 817.5 attorney hours and 172.8 paralegal hours, and costs of $28,984.36 (*see* Exhibit 2 to Declaration of James A. Francis); for Community Legal Services, Inc., $173,576.00 in fees for 309.7 hours of attorney time (*see* Declaration of Sharon Dietrich); for Consumer Litigation Associates, P.C., $143,203 for  249.05 hours of attorney time and costs of $4,087.00 (*see* Declaration of Leonard A. Bennett and Exhibit B thereto).   Recorded fees for all counsel totals $1,482,859.00 and costs total $76,589.46, for combined fees and costs of $1,559,448.46.

1.    **Hourly Rates**

One important reference point for the determination of appropriate hourly rates is the hourly fee schedule of Community Legal Services (CLS), long accepted by the Third Circuit as a reflection of the prevailing market rates in Philadelphia. *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001). In this case, the Court has the benefit of the recent analysis of the CLS Fee Schedule conducted by Abraham C. Reich, the co-chair of Fox Rothschild and former Bar Chancellor. *See* Dietrich Decl., Ex. 3-A. The Reich report utilized a number of sources to develop a proposed revised schedule, which the CLS Board adopted in September, 2014. *See* Declaration of Michael Donahue, Ex. 3 to the Dietrich Decl. Among those sources were the National Law Journal Billing Survey of 2013 (noting partner rates of $650 to $1,050 in the major law firms), the Updated Laffey Matrix (listing a rate of $771 for lawyers with 20 or more years of experience), and an overall increase of 11% in rates since 2011, which together led Reich to conclude that the CLS Fee Schedule, last updated in 2011, did not reflect current market rates. Reich Report.  The new schedule, based on the Reich analysis and recommendation, set a top rate at CLS, for senior attorneys with more than 25 years of experience at $600-650. *Id.*

Lead Counsel Irv Ackelsberg, who when he left CLS in 2006 as a Managing Attorney and head of the Consumer Unit, had worked at CLS for 30 years. *See* Ackelsberg Decl. At the firm Langer Grogan & Diver, PC, where he has practiced since leaving CLS, his hourly rate is set at $600, *i.e.*, within the applicable range on the CLS Fee Schedule.  In a separate declaration prepared for this matter, Dennis Suplee, a partner in the Schnader Firm, has opined, to a reasonable degree of professional certainty, that the Langer fee schedule is not only reasonable, but "lower than those charged by other firms in this City, . . . for lawyers with comparable credentials and experience." Declaration of Dennis R. Suplee, Attachment 3 to Ackelsberg Decl.

James Francis, of the firm Francis & Mailman, accounts for most of the class action litigation in this District under the Fair Credit Reporting Act and is, therefore, well known to this Court. He is requesting an hourly rate of $580.00. The Francis & Mailman rates were separately reviewed and endorsed in an expert opinion by Abraham Reich, applying the same analysis he applied to the CLS schedule. *See* Ex. B to Francis Decl.  The rates of the Francis firm have been frequently approved by this Court. *See King v. General Information Services, Inc*., C.A. No. 10-6850 (E.D. Pa. Nov. 4, 2014) (Doc. 126) (approving similar hourly rates and awarding lodestar multiplier of 1.38); *Robinson v. General Information Services, Inc.,* C.A. No. 11-7782 (E.D. Pa. Nov. 4, 2014) (Doc. 57) (approving similar hourly rates and awarding lodestar multiplier of 1.50); *Sapp v. Experian Information Solutions, Inc.,* 2013 WL 2130956 (E.D. Pa. May 15, 2013) (awarding fee request in full); *Chakejian v. Equifax Info. Servs.*, 275 F.R.D. 201, 216-20 (E.D. Pa. 2011) (awarding request in full); *Barel v. Bank of America*, 255 F.R.D. 393, 403-04 (E.D. Pa. 2009) (awarding firms 1.35 multiplier of lodestar).

Sharon Dietrich and Nadia Hewka of CLS seek hourly rates of $610 and $495, respectively, set by the CLS Attorney's Fee Committee in accordance with the revised schedule and the Reich Report. *See* Donahue Decl., Ex. 3 to the Dietrich Decl.

Leonard Bennett has handled more FCRA class action litigation nationally than any other lawyer, with the possible exception, he suggests modestly, of Mr. Francis. Bennett Decl. He is the co-author of the principle FCRA treatise published by the National Consumer Law Center. *Id*. Mr. Bennett, who is a member of the Virginia and North Carolina bars, requests an hourly rate of $575. This rate has recently been approved by other courts. *Berry et al v. LexisNexis Risk & Information Analytics Group, Inc. et al*, 3:11cv754 (E.D. Va. Sept. 5, 2014); *James et al v. Experian Information Solutions, Inc*., 3:12-cv-00902 (E.D.Va. Oct. 29, 2014).

14

### 2.   **Hours Expended**

In support of this motion, the Plaintiffs have submitted many pages of detailed, contemporaneously entered time records specifying the date of work performed, the attorney performing the work, the nature of the work, the amount of time spent and the hourly rate charged for the tasks. This submission readily meets this Circuit's requirement of the degree of specificity required of a party seeking attorneys' fees in a percentage-of-recovery case. *See Prudential*, 148 F.3d at 341-43 (district court found detailed time summaries unnecessary where it was merely using lodestar calculation to double check fee award). Counsel's submission also meets the requirements for a statutory fee-shifting award. *See Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990) (specificity required to extent necessary to determine if the hours claimed are unreasonable for the work performed). The Declarations submitted herewith also set forth the basis for the division of labor among the firms and their efforts to litigate the case in an efficient manner. There was no time for which compensation is now requested in this case that was "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). All the time submitted was reasonably necessary to achieve the successful outcome for the Plaintiffs and the Class, and fees should not be reduced simply because Plaintiffs may not have been successful on every contention in the litigation. *Hensley*, 461 U.S. at 436.

### 3.   **Costs**

The Declarations of counsel filed simultaneously herewith show that costs as set forth therein were incurred in the prosecution of this case. The bulk of the costs related to filing fees, deposition costs, travel, mediation, legal and other research, copying and mail charges. All of the costs were advanced by Plaintiffs' counsel and were necessarily incurred. Plaintiffs should be awarded the unreimbursed costs in full.

**D.**     **This Action Was Taken On A Totally Contingent Basis**

Another factor for the Court to consider in awarding fees is the contingent nature of the litigation. *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir. 1973).  Here, the litigation was totally contingent.  Class Counsel were unable to mitigate any of the risk of nonpayment and, in fact, were required to spend, or incur obligations, to effectively litigate this case.

Class Counsel undertook a substantial commitment of time and money to prosecute this class action.  The Class itself risked nothing out-of-pocket.

**E.**     **The Level of Success Achieved**

Counsel obtained for the Class a very good result.  Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award.  *Hensley,* 461 U.S. at 436.  Given the nature of the litigation, the complicated issues involved, the risks faced, the quality of the work performed, and the rigorous defenses confronted, an award in the amount requested unquestionably represents an appropriate level of compensation for the success Class Counsel achieved.  The settlement obtains a substantial benefit for the Class, represents a tangible value for all those Class members who could not otherwise retain any counsel to ensure their rights were protected, benefitted the public at large through the change in Defendant's practices and is well within the range for similar cases and provides for a recovery in an environment of serious, practical risks and/or impediments to the ultimate success of the claims.  Thus, the requested fee is reasonable in relation to the benefit achieved.

**F.**     **Proportionality is Not Appropriate in Assessing The Fee Request**

Some courts have raised a concern in consumer protection cases as to whether the requested fee is reasonable in light of the amount of the sums earmarked for class members.  However, because Plaintiffs prevailed on the statutory fee-shifting claim raised in the

16

Complaints, the fee award cannot be diminished to maintain some ratio between the fee and the individual statutory damages award. *See United Auto Workers Local 259 Social Sec. Dept. v. Metro Auto Center*, 501 F.3d 283, 291 (3d Cir. 2007) (citing *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031,1041-42 (3d Cir. 1996)). *See also Sheffer v. Experian Information Solutions, Inc.*, 290 F.Supp.2d 538, 550-51 (E.D. Pa. 2003) ("proportionality analysis between the amount of damages awarded and the amount of counsel fees requested … is an impermissible basis upon which to reduce a fee award"); *Bonett v. Education Debt Services, Inc.*, 2003 WL 21658267, at *8 (E.D. Pa. May 9, 2003); *Oslan v. Law Offices of Mitchell N. Kay*, 232 F.Supp.2d 436, 444 (E.D. Pa. 2002). This is especially true where, as here, a plaintiff has achieved a future benefit for a class as well as the general public.

Under fee-shifting statutes such as the FCRA, the amount of attorney fees awarded is not required to be proportionate to the amount of damages recovered. This is to encourage private counsel to enforce important consumer rights legislation. Noting that Congress contemplated that civil plaintiffs would act as private attorneys general, the Third Circuit has stated:

> Congress provided fee shifting to enhance enforcement of important civil rights, consumer protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.

*Student Public Interest Research Group of New Jersey v. AT&T Bell Laboratories*, 842 F.2d 1436, 1449 (3d Cir. 1988). One of the basic realities of consumer litigation was recognized by the Fifth Circuit in *McGowan v. King Inc.,* 661 F.2d 48, 51 (5th Cir. 1981), where the court stated:

> The borrower's counsel did not inflate this small [Truth-In-Lending] case into a large one; its protraction resulted from the stalwart defense. And although Defendants are not required to yield an inch or to pay a dime not due, they may by

militant resistance increase the exertions required of their opponents and thus, if unsuccessful, be required to bear that cost.

*See also, City of Riverside v. Rivera*, 4770 U.S. 561 (1986) (affirming award of $245,456 in fees where plaintiff received $13,300 in damages in civil rights litigation); *Perry v. Fleet Boston Financial Corp*., 229 F.R.D. at 123 (noting importance of awarding fees in consumer protection class litigation that "addresses important consumer concerns that would likely be ignored without such class action lawsuits [and] must be encouraged").

The same principles apply here in the context of a settled case.  While the fees sought by Plaintiffs' counsel might be considered by some to be relatively large in relation to the amount of the individual awards distributed to members of the Class, in actuality the fees are reasonable under the circumstances.

### G.     The Standing Of The Attorneys Involved

The attorneys involved in this case have reputations in Pennsylvania and nationally for handling class action litigation.  See Ackelsberg, Francis, Dietrich and Bennett Declarations. Class Counsel have worked together in the past and worked together here in a coordinated manner to avoid duplication of effort and achieve the settlement.  Class Counsel have either described their experience in their Declarations and/or included their firm biographies in their declarations.

### H.     The Absence of Objections

As indicated above, the notice disseminated to class members stated that Class Counsel would seek an award of the counsel fees and costs not in excess of $2 million, subject to Court approval.  With the exception of the costs of notice and settlement administration costs paid by Defendant, costs and expenses were borne by Class Counsel to litigate this action.  Out of all the Class members receiving notice, not a single Class member has objected to payment of the

requested fees and cost reimbursement. The lack of any serious objection is a highly significant indicator of the reasonableness of the fee request.  *See Chakejian,* 275 F.R.D. at 218 (only one substantive objection from 40,000 member class); *Perry,* 229 F.R.D. at 124.

Class Counsel has worked diligently and has achieved this beneficial result through their combined, coordinated efforts.  Counsels' ability to effectively bring this case to a conclusion should be reflected in the awarding of the full fee requested.

## IV.    CLASS COUNSEL SHOULD BE REIMBURSED THEIR REASONABLE EXPENSES

The efforts of Class Counsel have resulted in substantial common benefits to the class.  In doing so, Class Counsel incurred out-of-pocket expenses in the aggregate amount of $76,589.46, for filing, depositions, travel, research and copying costs. *See* Declarations filed herewith.  These costs are eminently reasonable in light of the nature of the action and the tasks that needed to be performed.

## V.    <u>CONCLUSION</u>

Under all the circumstances existing here, the request for fees and costs is more than reasonable.  For all the foregoing reasons, Plaintiffs request that the Court award their counsel their reasonable attorneys' fees and reimbursement of expenses in the total amount of $ 2 million, in accordance with the Settlement Agreement.

Dated:  November 25, 2014                    Respectfully submitted,


   */s/ Irv Ackelsberg*
**LANGER GROGAN & DIVER, P.C.**
IRV ACKELSBERG
1818 Arch Street, Ste. 4130
Philadelphia, PA 19103
(215) 320-5660

19

**FRANCIS & MAILMAN, P.C.**
JAMES A. FRANCIS
DAVID A. SEARLES
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

**CONSUMER LITIGATION ASSOCIATES, P.C.**
Leonard A. Bennett
12515 Warwick Boulevard # 101
Newport News, VA 23606
(757) 930-3660

**COMMUNITY LEGAL SERVICES, INC.**
SHARON M. DIETRICH
NADIA HEWKA
1424 Chestnut Street
Philadelphia, PA 19102
(215) 981-3700

*Attorneys for Plaintiffs and the Class*